**James STANTON, Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–84–203–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 24, 1984.

Keith Jones, Amarillo, for appellant.

Danny E. Hill, Dist. Atty. and Daniel L. McBride, Asst. Dist. Atty., Amarillo, for State.

Before HUGHES, BURDOCK and HILL, JJ.

OPINION

HILL, Justice.

James Stanton, Jr. appeals his conviction for the offense of aggravated robbery. Trial was to a jury which found him guilty. The trial court assessed his punishment at twenty years in the Texas Department of

Corrections. He complains on appeal that his confession was improperly admitted since it resulted from an illegal arrest and that a juror should have been excused for cause.

We affirm, because we find that the arrest was not illegal and because we find that the trial court did not abuse its discretion in denying Stanton's challenge of the juror for cause.

■ By grounds of error numbers one and two, Stanton complains of the trial court's admission into evidence of his written confession. He urges that it should have been excluded as a product of an illegal warrantless arrest. We find that Stanton's arrest was valid, because it was in compliance with TEX.CODE CRIM. PROC.ANN. art. 14.04 (Vernon 1977). Article 14.04 provides:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

At about 12:35 a.m. on January 9, 1983, five men in ski masks and heavy coats robbed the Texas Tumbleweed Restaurant in Amarillo. Two of the witnesses informed the police that they believed one of the gunmen to be an ex-employee of the restaurant. After the police took the ex-employee into custody, he gave a statement admitting his participation in the robbery and implicating Stanton. He identified Stanton's car as the one used in the robbery. After receiving this information in the early morning hours of January 10, 1983, the police began looking for Stanton. The officers had also received information from one of the victims that one of the robbery suspects had a speech defect. Officer James Mitchell, as a result of prior dealing with Stanton, knew that he had a *speech defect. Because of the early hour, there was no time to secure an arrest warrant.* The police staked out Stanton's automobile and arrested him three blocks from his home as he was driving away from his home at 7:40 a.m.

We first find that the police officers had sufficient probable cause to justify the arrest of Stanton. The information from the other participant in the robbery was corroborated by the victim's report that one of the participants in the robbery had a speech defect like that of Stanton. None of the victims at the trial acknowledged such a report, but that merely created a factual question which the trial court resolved against Stanton.

Stanton urges that these facts did not justify an arrest without warrant under the provisions of art. 14.04 because the arresting officers both stated that they had no reason to believe appellant was fleeing at the time of the arrest. Officer James Mitchell testified that he had no knowledge as to whether Stanton was fleeing or not; that he had no factual basis to believe that he might be fleeing, *other than the fact that he was in a motor vehicle leaving his residence*; and no factual basis to believe that he was going to leave the country. Officer Fred Perez testified that he did not have any knowledge or reason to believe that Mr. Stanton was about to leave the city and he was not aware of any other officer who had any such information.

The word "escape" is not defined in the statute. It is defined in *Webster's Third New International Dictionary* as "to get away (as by flight or conscious effort): break away, get free, or get clear ..." Although the officers did not have specific knowledge that Stanton was leaving the city, county, or state, they could observe with their own eyes that he was leaving the premises where they knew he was, so that in that sense he was "escaping" or "getting away" from them. It has been held in the past that officers were justified in making an arrest under the authority of art. 14.04 when they had probable cause to believe that the suspect had committed a *felony and when the suspect was going* from one place to another, at a time when the officers did not have time to procure a warrant. *Chamberlain v. State*, 453

S.W.2d 490, 493 (Tex.Crim.App.1970); *Trammell v. State,* 445 S.W.2d 190, 193 (Tex.Crim.App.1969). In neither of these cases did the officers have specific information that the suspects were about to escape, other than their personal observation of the movement of the suspects. Stanton cites no case which sets forth any requirement that officers have information that the suspect is about to leave the city, county, or the state before they may arrest someone under the provisions of art. 14.04.

The only alternative available to the officers would have been to let Stanton go, hoping that they could find him later. They are not required to act in such an irresponsible way. *Hollomon v. State,* 633 S.W.2d 939, 943 (Tex.App.—Austin 1982, pet. ref'd). Since there was no misconduct on the part of the officers and since Stanton was given his *Miranda* warnings, the trial court did not err in admitting Stanton's statement into evidence. *Hollomon, supra.* We overrule grounds of error numbers one and two.

By ground of error number three, Stanton asserts that the trial court erred in failing to grant his motion for new trial since there was no evidence to sustain the jury verdict other than the illegally-admitted confession. In view of our holding that the confession was properly admitted, we overrule ground of error number three.

 Stanton, in grounds of error numbers four and five urges that the trial court erred in failing to excuse a juror for cause. TEX.CODE CRIM.PROC.ANN. art. 35.-16(a)(9) (Vernon Supp.1984) requires that a prospective juror be dismissed for cause when challenged if "he has a bias or prejudice in favor of or against the defendant; ..." When bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a' degree that the prospective juror is disqualified and should be excused from jury service. *Anderson v. State,* 633 S.W.2d 851, 853–54 (Tex.Crim.App.1982).

On voir dire the juror stated, in response to a question as to whether a simple indictment would enter into her mind as proof of guilty or not guilty, "Well, I would think a simple indictment, there was some reason he was here." She also said that she thought it natural that everyone who walked in the courtroom would wonder what it was he did. However, she further testified that she was not saying that Stanton was guilty just because an indictment was returned against him.

This interchange indicates equivocating answers on the part of the prospective juror. The trial judge reviewing answers of an equivocating veniremen has the opportunity to observe the tone and demeanor of the prospective juror in determining the precise meaning intended. We cannot say that the trial court erred in refusing to sustain Stanton's challenge for cause. *See Garza v. State,* 622 S.W.2d 85, 92 (Tex. Crim.App.1980). We overrule grounds of error numbers four and five.

The judgment is affirmed.

HUGHES, Justice, dissenting.

I respectfully dissent. I do not think the State carried its burden of proving the existence of probable cause and the existence of circumstances which made it impracticable to procure a warrant. *Washington v. State,* 518 S.W.2d 240, 242 (Tex.Crim.App. 1975).

The record here reflects that the police were given information by a co-participant in the robbery which implicated Stanton. The information included a description of the car used in the robbery. Surveillance of the car was set up until a warrant could be obtained. When Stanton got in his car and began driving away, he was stopped and arrested. The arresting officers testified *that they had no reason to believe Stanton was trying to escape.*

Under recent holdings of the Court of Criminal Appeals, "a showing that the offender is about to escape" is indispensible under TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977). *Pearson v. State,* 657 S.W.2d 120 (Tex.Crim.App.1983); *Randall v. State,* 656 S.W.2d 487 (Tex.Crim.App.

1983). There must be a showing that the actor was acting upon satisfactory proof from representations by a credible person that the offender is about to escape, so that there is no time to procure a warrant. *Fry v. State*, 639 S.W.2d 463, 476 (Tex.Crim. App.1982). The officer's testimony here shows just the opposite; *they had no reason to believe Stanton was escaping.* A warrant should have been obtained and the arrest was unauthorized.

Having determined the arrest was illegal, we turn to the question of whether the confession obtained should be excluded. It has long been the law that a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the *confession is* sufficiently an act of free will to purge the primary taint. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Green v. State*, 615 S.W.2d 700 (Tex.Crim.App.1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). The factors to be considered in determining this question are:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and,

(4) the purpose and flagrancy of the official misconduct.

*Green, supra,* at 708.

As to the first factor in *Green,* the record reflects that Stanton was given his *Miranda* warnings at the time he was arrested and again when he arrived at the police station in the interrogation room. The record clearly reflects the requirements of *Miranda* were satisfied. The giving of the warnings is not sufficient however to purge the taint of an illegal arrest. *Brown v. Illinois, supra.*

As to the other factors the record shows that Stanton was arrested at 7:40 a.m. and that interrogation began at 8:10 a.m. and was completed at 11:31 a.m. During this time, Stanton was given a hamburger and allowed to go to the restroom. There is no question there was a close proximity between the confession and the arrest.

The Court of Criminal Appeals has held that the most important factor to be considered is the presence of intervening circumstances. *Sweeten v. State*, 667 S.W.2d 779 (Tex.Crim.App.1984); *Townsley v. State*, 652 S.W.2d 791 (Tex.Crim.App.1983). In this case, the record does not reveal any intervening circumstances that would sufficiently purge the taint of the illegal arrest. I can draw no other conclusion but that Stanton's confession was the fruit of his illegal arrest. *Ussery v. State*, 651 S.W.2d 767 (Tex.Crim.App.1983). The trial court erred by permitting the introduction before the jury.

I would reverse and remand it for another trial.