John Edward VAUGHN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–91–00237–CR.

Court of Appeals of Texas,
Dallas.

May 5, 1992.
Rehearing Denied June 10, 1992.

R.D. Tucker, Dallas, for appellant.

Karen R. Wise, Dallas, for appellee.

Before LAGARDE, KINKEADE and CHAPMAN, JJ.

## OPINION

KINKEADE, Justice.

John Edward Vaughn, Jr. appeals his conviction for aggravated robbery. Following a jury trial, the jury assessed punishment at twenty-seven years' confinement in the Department of Criminal Justice, Institutional Division. In three points of error, Vaughn argues that (1) the trial

court erred in admitting his confession, (2) the evidence is insufficient to support his conviction, and (3) the trial court erred in forcing him to go to trial with a biased juror. Because the trial court abused its discretion when it allowed Vaughn to go to trial with an objectionable juror, we reverse the trial court's judgment and remand this cause for a new trial.

## FACTUAL HISTORY

Vaughn, Marvin Wade, and Kevin Wherry met to talk about robbing a motel. Afterwards, the three men drove to the motel and entered the office wearing masks. They told everyone in the motel office to lie down on the floor. Assistant manager Deda Bonura, Bonura's daughter, her daughter's friend, the motel owner, and a patron lay down on the floor as the men instructed them. While Wade held the gun and pulled the phone cord from the wall, Wherry put the money from the cash register in a bag that Vaughn had retrieved from the car. Before leaving, Wade told everyone to continue to stay down or they would be killed. After the three men left, they divided the money three ways. Later, the police arrested the three men in connection with another robbery.

## SUFFICIENCY OF THE EVIDENCE

In his second point of error, Vaughn contends that the evidence is insufficient to support his conviction for aggravated robbery. Vaughn argues that, because his confession was inadmissible and the State's witnesses failed to connect him to the crime, the evidence is insufficient to sustain his conviction.

When reviewing the sufficiency of the evidence, the critical inquiry remains whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Marroquin v. State*, 746 S.W.2d 747, 750 (Tex.Crim.App.1988); *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim.App. 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). In determining the sufficiency of the evidence, we must consider all of the evidence, whether properly or improperly admitted. *Thomas v. State*, 753 S.W.2d 688, 695 (Tex.Crim. App.1988). This standard supports the jury's responsibility, as the trier of fact, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See McCarty v. State*, 788 S.W.2d 213, 214 (Tex.App.—Fort Worth 1990, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The jury, as the trier of fact, remains the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. The jury may accept or reject any or all of the evidence for either side. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *see* Tex.Code Crim.Proc.Ann. arts. 36.13 & 38.04 (Vernon 1979).

The corpus delicti of a crime is the establishment of substantial facts that a crime has been committed. Black's Law Dictionary 310 (5th ed. 1979). When the State establishes the corpus delicti of the crime by other evidence, the defendant's confession of the offense, unaided by other evidence, is sufficient to prove guilt. *Hester v. State*, 544 S.W.2d 129, 136 (Tex.Crim. App.1976). The State established the corpus delicti of the aggravated robbery through the testimony of assistant motel manager Bonura and the motel owner. Both testified that (1) two masked men came to the motel (Vaughn had stepped outside to get the bag for the cash), (2) exhibited a handgun, and (3) in the course of committing the theft of money from the cash drawer, threatened or placed them both in fear of imminent bodily injury or death. In his confession, Vaughn stated that he and two friends robbed two men and a woman in a motel at gunpoint. Vaughn testified that Wade held the gun, that Wherry collected the money from the cash drawer, and that he obtained the bag to put the money in. All three men split the money from the robbery. Viewing this evidence in the light most favorable to the verdict, we conclude that the jury could find Vaughn guilty as a party to the of-

fense beyond a reasonable doubt. Because the State established the corpus delicti and Vaughn confessed to the crime, the evidence is sufficient to support his conviction. We overrule his second point of error.

## VAUGHN'S CONFESSION

In his first point of error, Vaughn contends that the trial court erred in admitting his confession. Vaughn argues that his confession was not voluntarily, knowingly, and intelligently made because police officers failed to properly inform him of his rights. Specifically, Vaughn complains that the police did not ask him if he wanted an attorney present during questioning.

■■■ To determine whether a defendant has constitutionally waived his rights under the Fifth Amendment, the State must show that (1) the relinquishment of the right was voluntary and (2) the waiver was made with a full awareness of both the right being abandoned and the consequences of the decision to abandon it. *Sanchez v. State,* 760 S.W.2d 731, 732 (Tex. App.—Corpus Christi 1988, no pet.). The trial court determines whether the defendant waived his right to remain silent and to have counsel present during questioning based upon the totality of the circumstances. *Harville v. State,* 591 S.W.2d 864, 866 (Tex.Crim.App.1979). Because the waiver can be determined from the circumstances surrounding the taking of a confession, the defendant does not have to expressly waive his right to counsel. Thus, the fact that a defendant does not specifically say that he waives counsel does not prevent the trial court from concluding that the accused knowingly waived his right to counsel. *Id.* at 866. The trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Lucas v. State,* 791 S.W.2d 35, 47 (Tex.Crim. App.1989).

■■■ No written statement is admissible unless it shows on its face that the accused received *Miranda* warnings. TEX. CODE CRIM.PROC.ANN. art. 38.22, § 2(a) (Vernon 1979); *see Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Whenever the defendant alleges acts of coercion and the acts are disputed, the issue is one to be determined by the trier of fact. *Harville,* 591 S.W.2d at 867. The trial court at the hearing is the sole judge of the weight and credibility of the witnesses. It may believe or disbelieve any part of any witness's testimony. *Id.* Once the accused "knowingly and intelligently" elects to proceed with an interrogation without the benefit of counsel, the uncounseled statements he then makes need not be excluded at trial. *Lucas,* 791 S.W.2d at 47.

■■ Dallas Police Officer Garen Cornett testified that he read Vaughn his rights before he started questioning Vaughn about the robbery. Officer Cornett stated that Vaughn said he understood his rights. Vaughn then discussed the crime with the officer. While Vaughn sat next to him, the officer wrote down Vaughn's statement. The officer then brought in a civilian witness, Debra Mathis. Mathis testified that the officer read the top of the statement, which listed the *Miranda* rights. She then asked Vaughn to read the statement out loud to her. Vaughn signed the statement in her presence. The officer also testified that Vaughn was not coerced, threatened, or promised leniency for making the statement.

Vaughn testified that he did not voluntarily give the statements. Although he graduated from high school, Vaughn stated that he had difficulty reading and writing. He testified that he did not ask the police to write down his statement and that he did not know what the statement said. Vaughn objected to the admission of the confession at trial. After a hearing, the trial court found that Vaughn gave a statement after he had been read his rights and after he had stated that he understood his rights. Further, the trial court found that the confession was made voluntarily and that Vaughn was not coerced, threatened, or promised leniency in exchange for a confession.

The record shows that:

(1) the officer read Vaughn his rights and that he understood his rights,

(2) Vaughn did not request an attorney at any point during questioning,

(3) the officer wrote down the statement as Vaughn told him the facts,

(4) in the presence of a civilian witness, the officer read the top part of the statement containing the *Miranda* warning to Vaughn and Vaughn read the bottom part of the statement out loud,

(5) Vaughn signed the statement in the presence of the officer and the civilian witness, and

(6) Vaughn testified that he had a learning disability and that he did not understand the statement he had signed.

When the evidence is disputed, the trial court may choose to disbelieve any witness's testimony. *Harville*, 591 S.W.2d at 867. Although Vaughn claimed that he did not voluntarily give the statement, the trial court chose not to believe his testimony. *Id.* Absent a showing that the trial court abused its discretion, the findings of the trial court supported by the evidence will not be disturbed on appeal. *Lucas*, 791 S.W.2d at 47. We conclude that, under the totality of circumstances, Vaughn knowingly and intelligently waived his right to have his counsel present during questioning and that the officer did not act improperly in taking Vaughn's confession. *See Harville*, 591 S.W.2d at 867; *Sanchez*, 760 S.W.2d at 732–33. Because Vaughn voluntarily, knowingly, and intelligently waived his right to remain silent after being informed of his rights, the trial court did not err when it allowed the admission of his confession. We overrule Vaughn's first point of error.

## BIASED JUROR

In his third point of error, Vaughn contends that the trial court erred in forcing him to trial with a biased juror. Vaughn argues that the juror's admission that she could not be fair or impartial constitutes reversible error.

Bias exists as a matter of law when a juror admits that he is biased for or against a defendant. *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Crim.App.1982). When a juror is shown to be biased as a matter of law, he must be excused when challenged, even if he states that he can set his bias aside and provide a fair trial. *Id.*; TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(9) (Vernon 1989). Under article 35.16(a)(9), it is not necessary to show a particular bias or prejudice in favor of or against the defendant. It is sufficient that the juror states that he cannot be a fair and impartial juror. *Sosa v. State*, 769 S.W.2d 909, 918 (Tex.Crim.App.1989).

When (1) a juror states that he can set aside his bias, (2) the trial court overrules the challenge for cause, and (3) bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that the juror is disqualified and should be excused from jury service. *Anderson*, 633 S.W.2d at 854; . *see also Williams v. State*, 773 S.W.2d 525, 537 (Tex.Crim.App.), *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1988); *Faulder v. State*, 745 S.W.2d 327, 339–40 (Tex.Crim.App.1987); *Cordova v. State*, 733 S.W.2d 175, 180–81 (Tex.Crim.App.1987); *Mays v. State*, 726 S.W.2d 937, 950 (Tex.Crim.App.1986). Mere acquaintance with the defendant or a State's witness is not a sufficient basis for disqualification. *Turner v. State*, 671 S.W.2d 679, 681 (Tex.App.—Dallas 1984, pet. ref'd). In reviewing the ruling of a trial court on a challenge for cause based on the bias of the juror, the decision of the trial court will not be disturbed, absent an abuse of discretion. *Williams*, 773 S.W.2d at 536. If bias is not established as a matter of law, the trial court's ruling is reviewed in light of all the juror's answers. *Williams*, 773 S.W.2d at 537.

After the trial court had sworn and impaneled the jury, juror Rosalind Alexander told the bailiff that she thought she knew Vaughn from high school. The bailiff told the trial court, and the trial court questioned Alexander outside the presence of the other jurors. The trial court asked

Alexander whether she was sure that she knew Vaughn from high school. She responded "yes." The trial court then asked her if she could be fair and impartial in this case with her knowledge of Vaughn. She responded "no." After these initial questions, the court proceeded to ask the juror if she knew Vaughn personally, if she knew of his reputation in the community, and if she socialized with him in high school. Alexander answered "no" to all three questions. After this last response, the trial court told Alexander that she was still on the jury. Vaughn then moved to quash the panel. Although characterized as a motion to quash, since the trial court had already impaneled the jury, the correct motion should have been for mistrial. Because we conclude that the trial court was aware of the relief that Vaughn was requesting, we will treat his motion to quash as a motion for mistrial. The trial court impliedly overruled the motion by proceeding with the trial.

■ When Alexander stated unequivocally that, with her knowledge of Vaughn, she could not be fair and impartial in this case, bias was established as a matter of law. *See Sosa*, 769 S.W.2d at 918; *Anderson*, 633 S.W.2d at 854. The record does not show that Alexander was asked or that she ever stated or otherwise indicated that she could set aside her feelings concerning Vaughn. Without such a showing, the trial court had no discretion to determine whether her bias actually existed. *See Anderson*, 633 S.W.2d at 854. Further, once Vaughn challenged Alexander by making a motion to quash the panel, the trial court had to remove Alexander from the jury. *See Anderson*, 633 S.W.2d at 854.

Even assuming that the trial court still retained the discretion to overrule Vaughn's challenge for cause without an indication by Alexander that she could set her feelings aside, the record before us is insufficient to show whether Alexander's bias did not actually exist to such a degree as to warrant disqualification. The trial court's decision must be supported by some evidence in the record. *Cf. Nichols v.*

*State*, 754 S.W.2d 185, 193 n. 4 (Tex.Crim. App.1988), *overruled in part on other grounds, Harris v. State*, 784 S.W.2d 5, 21 (Tex.Crim.App.1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). No evidence exists here. The trial court never asked Alexander the basis of her opinion. Rather, the court apparently assumed that, unless her bias was based on knowing Vaughn personally, knowing his reputation in the community, or her socialization with him, her bias could not exist to such a degree as to warrant disqualification. Further, the trial court never asked and Alexander never gave any indication that she could lay her bias, no matter what the source, aside. Because the trial court failed to determine the basis for Alexander's inability to be fair and impartial or whether she could lay that opinion aside, it abused its discretion in not dismissing her.

### Harm Analysis

■ Alexander was subject to a challenge for cause. TEX.CODE CRIM.PROC. ANN. art. 35.16(a)(9) (Vernon 1989). If a defendant makes a challenge for cause prior to the jury's impanelment and if the trial court erroneously overrules it, to establish reversible error, the defendant must show that he exhausted all his peremptory challenges and that was forced to accept an objectionable juror. *Williams v. State*, 565 S.W.2d 63, 65 (Tex.Crim.App. [Panel Op.] 1978); *Gonzalez v. State*, 169 Tex.Crim. 49, 331 S.W.2d 748, 749 (1960). If, subsequent to impanelment but prior to the jury's verdict, it is discovered that a biased or prejudiced juror was selected without fault or lack of diligence on the part of defense counsel, then it is an abuse of discretion for the trial court not to grant a motion for new trial. *See Herrera v. State*, 665 S.W.2d 497, 500–01 (Tex.App.—Amarillo 1983, pet. ref'd).

■ Alexander's bias or prejudice came to light after the trial court had impaneled the jury. Prior to allowing the attorneys to begin their voir dire, the trial court addressed the jury as follows:

Mr. Vaughn is the defendant in this particular case. Do any of you know any

of the participants in this trial, by name or reputation or any manner or means that could hamper your ability to serve as a fair and impartial juror?

Is there anyone out there right now, because again, we don't know and we can't think for you or know what's going on in your mind, whatever that reason may be, that you feel you could not at this time sit as a fair and impartial juror and follow the law in this case? Anyone on the first row?

Anyone on the second row?

Anyone on the third row?

[no response]

The court's question directly addressed the issue of impartiality. The record does not show that Alexander responded to the court's inquiry. We conclude, therefore, that Vaughn's counsel was without fault or lack of diligence and that he acted in good-faith reliance on Alexander's response to the court's inquiries into this matter. *See Herrera,* 665 S.W.2d at 502. Consequently, Vaughn was deprived of his right to peremptorily challenge Alexander. When the trial court told Alexander that she was still on the panel, it impliedly overruled Vaughn's motion to quash the panel and forced him to accept an objectionable juror. Vaughn's motion to quash in this situation is equivalent to asking for a mistrial. Therefore, it was an abuse of discretion for the trial court to overrule the motion. Because the trial court abused its discretion when it allowed Vaughn to go to trial with an objectionable juror, the trial court committed reversible error. We sustain his third point of error.

We reverse the trial court's judgment and remand this cause for a new trial.

LAGARDE, J., dissents.

LAGARDE, Justice, dissenting.

I respectfully dissent. The majority hold that Rosalind Alexander *unequivocally* stated she "ha[d] a bias or prejudice in favor of or against the defendant." Tex. Code Crim.Proc.Ann. art. 35.16(a)(9) (Vernon 1989). Thus, they conclude that she was disqualified as a matter of law. The majority rely on *Anderson v. State,* 633 S.W.2d 851, 854 (Tex.Crim.App. [Panel Op.] 1982), for the rule of law that, when a prospective juror is shown to be biased as a matter of law, the juror *must* be excused when challenged. They ignore, however, the further teaching of that case that "it is left to the discretion of the trial court to first determine whether or not bias exists." *Anderson,* 633 S.W.2d at 854. I conclude that the rule set out in *Swap Shop v. Fortune,* 365 S.W.2d 151, 154 (Tex.1963), and cited by the court in *Anderson,* applies here—*i.e.,* whether a juror is biased or prejudiced may be a *factual* determination to be made by the court. I do not agree that the facts of this case establish bias or prejudice as a matter of law.

I disagree with the majority that Alexander unequivocally stated that she was biased or prejudiced for or against Vaughn under the facts of this case. Thus, it was left to the discretion of the trial court to first determine whether bias or prejudice existed. *Anderson,* 633 S.W.2d at 854. In my view, the trial court had discretion to determine whether bias or prejudice *actually* existed to such a degree that Alexander was disqualified. *Anderson,* 633 S.W.2d at 853–54.

The standard of review for this Court is abuse of discretion. *Anderson,* 633 S.W.2d at 854. Reviewing the record in light of all of the juror's answers, as we must, I am not convinced that the trial court abused its discretion. *See Williams v. State,* 773 S.W.2d 525, 537 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989).

Following voir dire and the striking of the jury lists, the trial judge swore in the jury and discharged the remainder of the venire. The jury was then excused for lunch. After lunch, the following questioning of Alexander occurred:

THE COURT: And after voir dire and being sworn in you contacted the bailiff and advised them [sic] that you think you know the defendant or are you sure now that do you know him from high school; is that correct?

VENIREMAN: Yes.

THE COURT: And having that knowledge of him, do you advise the Court that you can still be fair and impartial in this case?

VENIREMAN: No.

THE COURT: You cannot. All right. So the only thing I can do is just quash the panel and we'll have to start voir dire all over again.

MR. JOHNSON [DEFENSE COUNSEL]: Judge, if the Court would like to make a call to the briefing attorneys, we'll be amenable to any reasonable alternative we've got.

THE COURT: I may try this. *Do you know the defendant personally?*

VENIREMAN: *No, I don't.*

THE COURT: *Do you know anything about his reputation in the community—*

·VENIREMAN: *No.*

THE COURT: (cont.)—*at school or have any kind of socialization that would cause you to be biased towards him?*

VENIREMAN: *No.*

THE COURT: You're on the jury....

(Emphasis added.) I do not read the above record excerpt as an unambiguous or unequivocal statement of bias or prejudice. A fair reading is that Alexander said she was not telling the trial judge that she could be fair and impartial in this case. She did not unequivocally say that she *was* biased or prejudiced for or against the defendant. Thereafter, the judge, through further questioning, established that the juror had no actual *factual* basis for bias or prejudice for or against Vaughn. She responded that she did not know him personally, by reputation, or through any kind of socialization. She offered no factual basis whatsoever for bias or prejudice for or against Vaughn. In my view, this exchange indicates an ambiguous answer on the part of Alexander. The trial judge reviewing answers of an equivocating venireman has the opportunity to observe the tone and demeanor of the prospective juror in determining the precise meaning intended, while we have only the "cold record."

*Mowbray v. State,* 788 S.W.2d 658, 666 (Tex.App.—Corpus Christi 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991); *see Briddle v. State,* 742 S.W.2d 379, 384 n. 4 (Tex.Crim.App. 1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Stanton v. State,* 678 S.W.2d 305, 307 (Tex.App.—Fort Worth 1984), *rev'd on other grounds,* 743 S.W.2d 233 (Tex.Crim.App.1988). Under the facts of this case, I cannot say that the trial court erred in refusing to excuse Alexander. *See Stanton,* 678 S.W.2d at 307.

The majority state that, if subsequent to trial but prior to the jury's verdict, it is discovered that a biased or prejudiced juror was selected without fault or lack of diligence on the part of defense counsel, then it is an abuse of discretion for the trial court not to grant a motion for new trial. *See Herrera v. State,* 665 S.W.2d 497, 500–01 (Tex.App.—Amarillo 1983, pet. ref'd). The majority conclude that, because the jury was already impaneled, Vaughn was deprived of his right to peremptorily challenge Alexander. They further state that, when the trial court told Alexander that she was still on the panel, it impliedly overruled Vaughn's motion to quash the panel and forced him to accept an objectionable juror. Thus, the majority conclude that, because Vaughn went to trial with an objectionable juror, he was harmed and his conviction must be reversed.

Without citing any authority, the majority continue their analysis, stating that "Vaughn's motion to quash in this situation is equivalent to asking for a mistrial." After characterizing Vaughn's motion to quash as a motion for mistrial, the majority conclude that "the trial court abused its discretion when it allowed Vaughn to go to trial with an objectionable juror...." A review of the record discloses that the trial court never expressly ruled on Vaughn's motion to quash the panel.[1]

MR. JOHNSON: I'd ask the Court to quash the panel.

THE COURT: We will see what the character of this woman is. We will see

---

**1.** Presumably, Vaughn referred to the jury because the remainder of the panel had already been excused and the actual jury had been impaneled and sworn.

if she can do the right thing. So anyhow, let's take a two minute break and let's get started....

In order to preserve a complaint for appellate review, a party must present to the trial court a timely motion and obtain an adverse ruling. TEX.R.APP.P. 52(a). When no adverse ruling is obtained, nothing is presented for review. *Gaines v. State,* 789 S.W.2d 926, 927 (Tex.App.—Dallas 1990, no pet.). Vaughn never obtained an adverse ruling. Error, if any, was not preserved. Nevertheless, for the reasons heretofore stated, I conclude that, based on the facts of this case, neither bias nor prejudice was established as a matter of law, but was a *factual* determination to be made by the court. *Anderson,* 633 S.W.2d at 854. Because the record reflects no basis for the conclusion that the trial court abused its discretion, I would affirm.

